**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**DANIEL KARON**, individually and on behalf of all others similarly situated,

*Plaintiff*,

*v.*

**POINTBREAK MEDIA LLC**, a Delaware limited liability company,

*Defendant*.

Case No. : 1:17-cv-1989

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Daniel Karon ("Karon" or "Plaintiff") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant Pointbreak Media LLC ("Pointbreak" or "Defendant") to: (1) stop its practice of placing calls using an "automatic telephone dialing system" ("ATDS") and/or using "an artificial or prerecorded voice" to the cellular telephones of consumers nationwide without their prior express consent; (2) stop Defendant from calling consumers who are registered on the National Do Not Call Registry; and (3) obtain redress for all persons injured by its conduct. Plaintiff Karon, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## PARTIES

1. Plaintiff Daniel Karon is a natural person and resident of Cuyahoga County, Ohio.

2. Defendant Pointbreak Media LLC is a limited liability company organized and existing under the laws of the State of Delaware. Pointbreak systemically and continuously conducts business throughout this District, the State of Ohio, and the United States. Pointbreak can be served through its registered agent, Agents and Corporations, Inc. at 1201 Orange Street, Suite 600, One Commerce Center, Wilmington, Delaware 19801.

**JURISDICTION AND VENUE**

3. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* (the "TCPA"), which is a federal statute.

4. This Court has personal jurisdiction over Pointbreak because Pointbreak solicits significant consumer business in this District, has entered into contracts in this District, and a significant portion of the unlawful conduct alleged in this Complaint occurred in and/or was directed to this District.

5. Venue is proper in this District under 28 U.S.C. § 1391(b) because Pointbreak conducts a significant amount of business within this District and because the wrongful conduct giving rise to this case occurred in and/or was directed to this District. Venue is additionally proper because Plaintiff resides in this District.

**COMMON ALLEGATIONS OF FACT**

6. Pointbreak purports to provide three main services: Search Engine Optimization (SEO); Search Engine Marketing (SEM); and "GoogleMyBusiness Activation"[1] to business customers.

---

[1] http://www.point-break.co/services.html#service-3

7. In reality, Pointbreak is charging businesses for a service that Google already offers to those same businesses for free.[2] That service, known as Google My Business, allows a business owner to control how their business information (e.g. business hours, phone number, directions) appears on both Google Search and Google Maps.[3]

8. Pointbreak also offers "Search Engine Optimization" or "SEO" services to businesses.

9. SEO services generally encompass any process that impacts the visibility of a particular website or a web page in a search engine's unpaid results. Such results are often referred to as 'natural," "organic," or "earned" results. In general, the higher ranked a website appears on a search results page, and the more frequently a site appears in the search results list, the more visitors it will receive from the search engine's users, with the idea that these visitors can be converted into customers.

10. In recent years, internet service firms such as Pointbreak have turned to unsolicited telemarketing as a way to increase its customer base. Widespread telemarketing is a primary method by which Pointbreak solicits new customers.

11. The TCPA prohibits companies, such as Pointbreak, from placing calls using an ATDS and/or using an artificial or prerecorded voice ("prerecorded calls") when making calls to cellular telephones without first obtaining consent.

12. Pointbreak has violated, and continues to violate, the TCPA and its implementing regulations by placing prerecorded calls to cellular telephone subscribers

[2] https://www.google.com/business/resources/
[3] https://www.google.com/business/

(a) who have not expressly consented to receiving such calls and/or (b) who have expressly requested ***not*** to receive such calls.

13. As Congress recognized:

> Many customers are outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers…. Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.[4]

14. Senator Larry Pressler, one of the original drafters of the TCPA, explained the need for the TCPA by observing that "[u]nlike other communications media, the telephone commands our instan[t] attention. Junk mail can be thrown away. Television commercials can be turned off. The telephone demands to be answered." 137 Cong. Rec. S18785 (daily ed. Nov. 27, 1991) (statement of Sen. Pressler).

15. As explained by the Federal Communications Commission ("FCC")[5], the TCPA requires "*prior express written consent* for all autodialed or prerecorded telemarketing calls to wireless numbers and residential lines." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG No. 02-278, FCC 12-21, 27 FCC Rcd. 1830 ¶ 2 (Feb. 15, 2012).

16. Yet, in violation of this rule, Pointbreak fails to obtain any prior express written consent to place prerecorded calls to consumers' cellular telephone numbers.

17. In response to the liability risk associated with the TCPA, numerous commercially available services exist to help companies, such as Pointbreak, that call

---

[4] Pub. L. No. 102-243 § 2(6, 12) (1991), codified at 47 U.S.C. § 227.

[5] The FCC is the federal agency given the administrative authority to interpret and enforce the TCPA. 47 U.S.C. § 227(b)(2).

others using prerecorded voices, identify cellular subscribers and otherwise ensure that calls are only made to consenting consumers. For instance, companies such as Infutor, Nextmark List, and Contact Center Compliance advertise their ability to instantly identify and flag disconnected telephone numbers from cellular telephone number data lists on a recurring basis (such as weekly or monthly). This type of service can identify disconnected numbers before they are recycled, thereby alerting mobile marketers that any consent associated with those telephone numbers has been terminated.

18. Despite the FCC's ruling, the industry guidelines, and the commercial availability of programs that help callers filter out non-consenting cellular numbers, Pointbreak fails to take the necessary steps to ensure that its prerecorded calls are placed only to consenting recipients.

19. Rather, in an effort to increase revenue and skirt additional costs, Pointbreak simply ignores the law when contacting individuals via prerecorded calls to their cellular telephones.

20. Online consumer complaints related to Pointbreak's unsolicited pre-recorded telephone solicitations are numerous. Indeed, the complaints are so widespread that an unrelated but similarly named company has changed the "Contact Us" portion of their website[6] to be a disclaimer giving Defendant's contact details and explaining that the other Point Break Media does not make autodialed or prerecorded calls. A screenshot of the other Point Break's website is reproduced below:

[6] http://www.pointbreakmedia.co/contact-us/




21. Pointbreak often disregards the issue of consent when contacting individuals via autodialed and/or prerecorded call to their cellular telephones. A small sampling from Internet message boards confirms this:

- "Automated call about your google listing that is about to expire. Don't bother picking up the phone. They give an option to opt out of future calls, but all they do is call with the same message, but from a different number -- genius."[7]
- "Spam. Point Break Media. automated message trying to sell their service."[8]
- "Second day in a row that this number came in. Picked up yesterday, it's a robo-woman claiming to want to update our Google business listing and if I am the business owner or the one who manages the business listing, press 1. I pressed 2 to be removed from their list, supposedly. Call came in again this morning, same number. Someone didn't get the memo, apparently."[9]

---

[7] http://800notes.com/Phone.aspx/1-618-216-9814
[8] *Id.*
[9] http://800notes.com/Phone.aspx/1-213-493-3950

- "Scam robocall recording claiming to be Google and that my business listing is at risk of being removed. They have called before and have been told multiple times that my number they are calling is a personal cell phone and that I do not own a business."[10]
- ""This is Paul with Point-Break Media, we're not affiliated with Google but if you don't take action now your business listing in Google will be removed." I don't have a business or a business listing so this is a scam."[11]

22. Pointbreak knows or should know that its autodialed calls are placed to non-consenting cellular telephone number subscribers. Indeed, Pointbreak has received numerous consumer complaints alerting it to this very fact. Ultimately, Pointbreak is responsible for verifying cellular telephone number ownership and obtaining consent before placing prerecorded calls to cellular telephone subscribers. Even with prior cellular subscriber consent, Pointbreak is liable under the TCPA for placing prerecorded calls to cellular telephone numbers reassigned to new subscribers without the new subscriber's consent. *See Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 641 (7th Cir. 2012) (under the TCPA, "[c]onsent to call a given number must come from its current subscriber," not its prior subscriber); *Breslow v. Wells Fargo*, 755 F. 3d 1265, 1267 (11th Cir. 2014) (consent from "called party" means consent from the person subscribing to the called number at the time the call was made, not the former subscriber); *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG No. 02-278, FCC 03-153, 18 FCC Rcd. 14014 ¶ 123 (July 3, 2003) ("we reject proposals to create a good faith exception for inadvertent autodialed or prerecorded calls to wireless numbers…")

[10] *Id.*
[11] http://800notes.com/Phone.aspx/1-937-365-2581

23. Pointbreak was, and is, aware that its unsolicited prerecorded calls were, and are, unauthorized as it fails to obtain prior express written consent before placing those calls to consumers. Ultimately, consumers are forced to bear the costs of receiving these unsolicited prerecorded calls.

24. Telemarketers can easily and inexpensively avoid calling consumers who are registered on the National Do Not Call Registry by "scrubbing" their call lists against the National Do Not Call Registry database. The scrubbing process identifies those numbers on the National Do Not Call Registry, allowing telemarketers to remove those numbers and ensure that no calls are placed to consumers whom opt-out of telemarketing calls.

25. To avoid violating the TCPA by calling registered numbers, telemarketers must scrub their call lists against the Registry at least once every thirty-one days. *See* 16 C.F.R. § 310.4(b)(3)(iv).

26. There are numerous third party services that will additionally scrub the call lists for a telemarketer to segment out landline and cellular telephone numbers, since the consent standards differ depending on what type of phone a telemarketer is calling.[12] Indeed, one service notes that they can:

> Instantly verify whether a specific phone number is wireless or wireline to learn if TCPA regulations apply – and verify the identity of the current subscriber to determine if they are the same party who provided you with consent.[13]

[12] *See e.g.* http://www.dncsolution.com/do-not-call.asp; http://www.donotcallprotection.com/do-not-call-compliance-solutions-1; http://www.mindwav.com/tcpa_compliance_solution.asp;

[13] https://www.neustar.biz/services/tcpa-compliance

27. By placing the unsolicited prerecorded calls at issue in this Complaint, Pointbreak caused Plaintiff and the other members of the Class actual harm and cognizable legal injury. This includes the aggravation and nuisance and invasions of privacy that result from the sending and receipt of such prerecorded calls, a loss of value realized for the monies consumers paid to their carriers for the receipt of such prerecorded calls, and a loss of the use and enjoyment of their phones, including wear and tear to the related data, memory, software, hardware, and battery components, among other harms.

28. In response to Pointbreak's unlawful conduct, Plaintiff filed this action seeking an injunction requiring Pointbreak to cease all unsolicited prerecorded calling activities and an award of actual or statutory damages to the members of the Class under the TCPA, together with costs and reasonable attorneys' fees.

**FACTS SPECIFIC TO PLAINTIFF DANIEL KARON**

29. Plaintiff Karon is the registered account owner and regular user of a cellular telephone number 216-xxx-2594.

30. The 216-xxx-2594 number has been registered on the National Do Not Call Registry since October 15, 2007.

31. On September 14, 2017 at 3:18 pm, Plaintiff received an unsolicited, pre-recorded phone call on his cellular telephone from 216-741-0969.

32. The September 14, 2017 call used a pre-recorded female voice and stated that she was calling regarding Plaintiff's Google business account.

33. Plaintiff pressed "1" to speak with a live person and was connected with one of Defendant's telephone representatives, "Kylie."

34. Defendant's phone representative told Plaintiff that if he didn't act now and sign up for Defendant's services, Google would place his business on a list of closed accounts.

35. Defendant's phone representative confirmed that she was an employee or agent of Pointbreak and provided a website address (www.point-break.co) and toll-free number (800-481-1521) to contact Defendant.

36. The prerecorded calls at issue were unquestionably placed by Defendant, as the caller-ID displayed a number assigned to and used by Defendant.

37. Plaintiff has never provided his prior express written consent to Defendant to receive prerecorded calls to him on the 216-xxx-2594 number.

38. Defendant failed to obtain any prior express consent that included, as required by 47 C.F.R. § 64.1200(f)(8)(i) a "clear and conspicuous" disclosure informing the person signing that:

> (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and
>
> (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

39. By placing the prerecorded calls as alleged herein, Defendant has caused consumers actual harm in the form of annoyance, nuisance, and invasion of privacy. In addition, the prerecorded calls disturbed Plaintiff's use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on Plaintiff's phone.

40. In order to redress these injuries, Plaintiff, on behalf of himself and the other members of the Class, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited prerecorded calls to cellular telephones.

41. On behalf of the Class, Plaintiff seeks an injunction requiring Pointbreak to cease all unsolicited pre-recorded calling activities, and to further cease placing calls to phone numbers listed on the National Do Not Call Registry, and an award of actual or statutory damages to the class members, together with costs and reasonable attorneys' fees.

## CLASS ALLEGATIONS

42. Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of himself and all others similarly situated and seeks certification of the following Class:

> **Robocall No Consent Class:** All persons in the United States who from a date four years prior to the filing of the initial complaint to the present: (1) Defendant (or a third person acting on behalf of Defendant) called; (2) on the person's cellular telephone number using an artificial or prerecorded voice; and (3) for whom Defendant lacked prior express consent to call that cellular telephone number at the time the call was made.

43. The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or their parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's

counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons. Plaintiff anticipates the need to amend the definition of the Class following class discovery, including discovery revealing the manner by which Defendant claims they obtained prior express consent to place autodialed and/or pre-recorded calls to the Plaintiff.

44. **Numerosity**: The exact number of members within the Class is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant has placed unsolicited calls to hundreds or thousands of consumers who fall into the definition of the Class. Members of the Class can be identified through Defendant's records.

45. **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class in that Plaintiff and the members of the Class sustained damages arising out of Defendant's uniform wrongful conduct, namely their unauthorized telemarketing calls. Plaintiff is a member of the Class defined herein, and if Plaintiff is able to recover for the claims set forth in this Complaint, then the other members of the Class will have a right to recover as well.

46. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex class actions, including class actions under the TCPA and related statutes. Plaintiff has no conflicts with, or interests antagonistic to, those of the Class, and Defendant has no defenses unique to Plaintiff.

47. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate

over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

a) Whether Defendant's conduct constitutes a violation of the TCPA;
b) Whether Defendant utilized an artificial or prerecorded voice to place calls to members of the Class;
c) Whether members of the Class are entitled to statutory and treble damages based on the willfulness of Defendant's conduct;
d) Whether Defendant obtained prior express consent to contact any class members;
e) Whether Defendant's calls constitute telemarketing or were dual purpose messages, and
f) To the extent Defendant's conduct does not constitute telemarketing, whether Defendant obtained prior express oral consent to contact any class members.

48. **Superiority:** This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. Joinder of all parties is impracticable, and the damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action. Individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the

benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

49. Adequate notice can be given to the members of the Class directly using information maintained in Defendant's records or through notice by publication.

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Robocall No Consent Class)**

50. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

51. Defendant and/or it's agent placed unsolicited calls to cellular telephone numbers belonging to Plaintiff and the other members of the Robocall No Consent Class using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*, without human intervention. The telephone dialing equipment utilized by Defendant and/or its agent, which is substantially similar to a predictive dialer, dialed numbers from a list, or dialed numbers form a database of telephone numbers, in an automatic and systematic manner.

52. These calls were made *en masse* and without the prior express written or oral consent of the Plaintiff and the other members of the Robocall No Consent Class to receive such calls.

53. These calls, including those to Plaintiff, utilized an artificial or prerecorded voice.

54. To the extent prior written express consent was required, Defendant failed to obtain prior written express consent that disclosed to the consumer that agreeing to receive pre-recorded calls was not a condition of purchase or use of any goods or service or that the consumer was agreeing to receive calls with the use of an ATDS or similar technology. No oral consent was provided either.

55. To the extent Defendant's agent placed the calls at issue, Defendant's agent acted with actual or apparent authority and/or in accordance with a contract between Defendant and its agent. Defendant's agent acted under Defendant's control and for Defendant's benefit and/or with Defendant's knowledge and approval. Defendant controlled its agent and knew about, and received the benefits of, the agent's calling activities. Defendant ratified the agent's conduct with respect to the placing of such calls.

56. Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff and the other members of the Robocall No Consent Class are each entitled to, under 47 U.S.C. § 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

57. In the event that the Court determines that Defendant's conduct was willfull and knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Robocall No Consent Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Daniel Karon, individually and on behalf of the Class, prays for the following relief:

1. An order certifying this case as a class action on behalf of the Class as defined above; appointing Karon as the representative of the Class and appointing his attorneys as Class Counsel;

2. An award of actual and statutory damages to be paid into a common fund for the benefit of Plaintiff and the Class;

3. An order declaring that Defendant's actions, as set out above, violate the TCPA;

4. A declaratory judgment that Defendant's telephone calling equipment constitutes an automatic telephone dialing system under the TCPA;

5. An order requiring Defendant to disgorge any ill-gotten funds acquired as a result of its unlawful telephone calling practices;

6. An order requiring Defendant to identify any third-party involved in the prerecorded calling as set out above, as well as the terms of any contract or compensation arrangement it has with such third parties;

7. An injunction requiring Defendant to cease all unsolicited prerecorded calling activities, and otherwise protecting the interests of the Class;

8. An injunction prohibiting Defendant from using, or contracting the use of, an automatic telephone dialing system without obtaining, and maintaining records of, call recipient's prior express written consent to receive calls made with such equipment;

9. An injunction prohibiting Defendant from contracting with any third-party for marketing purposes until it establishes and implements policies and procedures for ensuring the third-party's compliance with the TCPA;

10. An injunction prohibiting Defendant from conducting any future telemarketing activities until it has established an internal Do Not Call List as required by the TCPA;

11. An award of reasonable attorneys' fees and costs to be paid out of the common fund prayed for above; and

12. Such further and other relief as the Court deems necessary.

**JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

**DANIEL KARON**, individually and on behalf of a Class of similarly situated individuals

Dated: September 22, 2017

By: /s/Adam T. Savett
One of Plaintiff's Attorneys

Adam T. Savett (VA73387)
adam@savettlaw.com
Savett Law Offices LLC
2764 Carole Lane
Allentown PA 18104
Telephone: (610) 621-4550
Facsimile: (610) 978-2970

Attorneys for Plaintiff and the Putative Class